IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN ANTHONY SILVERA,

      Petitioner,               No. 2:09-cv-2326 KJN P

   vs.

GARY SWARTHOUT, et al.,[1]

      Respondents.          ORDER

_____/

I. Introduction

      Petitioner is a state prisoner proceeding without counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Both parties have consented to proceed before the undersigned for all purposes. See 28 U.S.C. § 636(c). Petitioner challenges his 2007 conviction. Petitioner pled no contest to second degree commercial burglary and admitted three prior prison terms in exchange for dismissal of a charge of petty theft with a prior. Petitioner was sentenced to a six-year suspended sentence, and placed on probation for three years. As a term of probation, petitioner was required to commit himself to the Delancey Street residential program and complete treatment to the satisfaction of the director. Petitioner subsequently violated his

---

[1] Warden Swarthout is substituted in as the respondent due to petitioner's transfer to California State Prison, Solano. (Dkt. No. 12.)

1

1  probation; his suspended six-year sentence was ordered to be executed.  Petitioner raises three
2  claims in the instant petition:  (1) the trial court allegedly violated the terms of the plea
3  agreement by sentencing petitioner to a six-year suspended sentence; (2) trial counsel was
4  ineffective based on counsel's failure to seek to withdraw the plea; and (3) petitioner was coerced
5  into waiving custody credits.  After careful review of the record, this court concludes that the
6  petition should be denied.

7  II.  <u>Facts and Procedural History</u>

8  Petitioner was charged with stealing merchandise from a Home Depot Store.
9  (Respondents' Lodged Document Ex. (hereafter "Ex.") 1.)  Petitioner entered a plea of no contest
10  and was sentenced on February 4, 2008.  (Ex. 7.)

11  On August 21, 2008, petitioner filed a petition for writ of habeas corpus in the
12  Solano County Superior Court.  (Ex. 9.)  The Solano County Superior Court denied the petition
13  on October 16, 2008.  (Ex. 10.)

14  Petitioner filed a second petition for writ of habeas corpus in the Solano County
15  Superior Court on February 23, 2009.  (Ex. 11.)  The Solano County Superior Court denied the
16  petition on April 23, 2009.  (Ex. 12.)

17  Petitioner filed a petition for writ of habeas corpus in the California Court of
18  Appeal, First Appellate District, Case No. A124761, on May 1, 2009.  (Ex. 13.)  The petition was
19  denied on May 27, 2009.  (Ex. 13.)

20  On June 30, 2009, petitioner filed a petition for writ of habeas corpus in the
21  California Supreme Court.  (Ex. 14.)  The California Supreme court denied the petition without
22  comment on July 22, 2009.  (Ex. 14.)

23  The instant petition was filed on August 21, 2009.  (Dkt. No.1.)

24  III.  <u>Standards for a Writ of Habeas Corpus</u>

25  An application for a writ of habeas corpus by a person in custody under a
26  judgment of a state court can be granted only for violations of the Constitution or laws of the

United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief

1  so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."
2  Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

3  The court looks to the last reasoned state court decision as the basis for the state
4  court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). If there is no reasoned
5  decision, "and the state court has denied relief, it may be presumed that the state court
6  adjudicated the claim on the merits in the absence of any indication or state-law procedural
7  principles to the contrary." Harrington, 131 S. Ct. at 784-85. That presumption may be
8  overcome by a showing that "there is reason to think some other explanation for the state court's
9  decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

10  Where the state court reaches a decision on the merits but provides no reasoning
11  to support its conclusion, the federal court conducts an independent review of the record.
12  "Independent review of the record is not de novo review of the constitutional issue, but rather,
13  the only method by which we can determine whether a silent state court decision is objectively
14  unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Where no reasoned
15  decision is available, the habeas petitioner has the burden of "showing there was no reasonable
16  basis for the state court to deny relief." Harrington, 131 S. Ct. at 784. "[A] habeas court must
17  determine what arguments or theories supported or, . . . could have supported, the state court's
18  decision; and then it must ask whether it is possible fairminded jurists could disagree that those
19  arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at
20  786.

21  IV.  Last Reasoned State Court Opinion

22  Petitioner raised the three instant claims in his petition for writ of habeas corpus
23  filed in the Solano County Superior Court. (Ex. 11.) The last reasoned rejection of these claims
24  is the April 23, 2009 decision of the Solano County Superior Court. (Ex. 12.) The state court
25  addressed petitioner's claims as follows:
26  ////

4

> Petitioner claims . . . the Court sentenced him to an illegal plea bargain, his counsel committed ineffective assistance by advising him to not withdraw his plea and the Court coerced a credit waiver from him.
>
> Petitioner cannot raise the illegal plea bargain and coerced credit waiver on writ of habeas corpus as they should have been raised on appeal. Habeas corpus is not a substitute for appeal. (*In re Dixon* (1953) 41 Cal.2d 756, 759; *In re Harris* (1993) 5 Cal.4th 813, 826-827.) The Court will not entertain any of Petitioner's issues in this petition because he should have raised them in FCR258408, which he filed August 21, 2008. "[P]iecemeal presentation of known claims and repetitious presentation of previously denied claims have not been condoned in this state." (*In re Clark* (1993) 5 Cal.4th 750, 777.)
>
> Finally, Petitioner has failed to state a prima facie case for relief. (*People v. Duvall* (1995) 9 Cal.4th 464, 475.) From the partial transcript Petitioner submitted, he obviously agreed to the plea bargain and sentence imposed. Furthermore, Petitioner's filing lacks specifics. He merely alleges legal conclusions. "Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing." (*People v. Duvall* (1995) 9 Cal.4th 464, 474.)
>
> IT IS THEREFORE ORDERED that the Petition for Writ of Habeas Corpus is denied.

(Ex. 12.)[2]

V. Petitioner's Claims

    A. Alleged Violation of Plea Agreement

Petitioner claims the trial court allegedly violated the terms of the plea agreement by sentencing petitioner to a six-year suspended sentence. Petitioner contends he signed a plea agreement for a five year sentence and assignment to the California Rehabilitation Center ("CRC"), but once petitioner could not be accepted by the CRC, petitioner was assigned to the Delancey Street Program under the same plea, yet sentenced to six years at the subsequent

---

[2] In FCR258408, the Solano County Superior Court denied petitioner's claim that he was unconstitutionally sentenced to the aggravated term in violation of his right to a jury trial relying on Cunningham v. California, 549 U.S. 270 (2007). (Ex. 10.) The superior court found that California's Determinate Sentencing Law, amended effective March 30, 2007, gave the trial judge "complete discretion . . . to choose the appropriate term of imprisonment when three possible terms exist." (Ex. 10 at 2.) Because "Petitioner pled no contest in March 2007, and was sentenced in May 2007, the trial court was free under the Sixth and Fourteenth Amendments to the U.S. Constitutional to choose the aggravated term." (Ex. 10 at 2.)

sentencing hearing.

A guilty plea must be knowing, intelligent and voluntary. Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969). "The voluntariness of [a petitioner's] guilty plea can be determined only by considering all of the relevant circumstances surrounding it." Brady, 397 F.2d at 749. In Blackledge v. Allison, 431 U.S. 63 (1977), the Supreme Court addressed the presumption of verity to be given the record of a plea proceeding when the plea is subsequently subject to a collateral challenge. While noting that the defendant's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the court stated that, nonetheless, the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge, 431 U.S. at 74. See also Marshall v. Lonberger, 459 U.S. 422, 437 (1983) (plea is presumed valid in habeas proceeding when the pleading defendant was represented by counsel); Little v. Crawford, 449 F.3d 1075, 1081 (9th Cir. 2006) (Little's plea was knowing and voluntary even though the trial court did not advise Little he was ineligible for probation); Chizen v. Hunter, 809 F.2d 560, 561-62 (9th Cir. 1986) ("[i]n assessing the voluntariness of the plea, statements made by a criminal defendant contemporaneously with his plea should be accorded great weight.") The record must affirmatively show that a criminal defendant's guilty plea is intelligent and voluntary. Boykin, 395 U.S. at 242-43.

Here, the record reflects that petitioner sought a modification of the plea agreement once he was found ineligible for placement at CRC. Petitioner's counsel sought petitioner's placement in the Delancey Street Program, at which point the prosecution asked the court to impose a six-year suspended sentence, with a full waiver of "all past, present and future credits." (Ex. 6 at 3.) The court responded:

////

1   THE COURT: That is my intention, Ms. Duey [counsel for petitioner].

    When the [petitioner] entered his plea in this matter, he was told, and the waiver form reflects, that he did it with the understanding that the maximum sentence he could receive at that time was five years. I think this was prior to the latest change in our sentencing laws, the emergency legislation that went through.

    The Court does today have the jurisdiction to impose the six year sentence, and if I permit him to go to Delancey Street, he needs to understand that that would be the term that would be suspended, and that he would face in the event he violates.

    MS. DUEY: Well, judge, I'm getting kind of sucker punched here, for lack of a better word, or phrase.

    THE COURT: This is the recommendation in the probation report.

    MS. DUEY: He pled on the plea form to five years.

    THE COURT: I understand that, but probation recommended six years suspended. . . .

(Ex. 6 at 3-4.) The court then permitted a brief recess to allow defense counsel to meet with petitioner and explain the situation. (Ex. 6 at 4.)

When the parties returned, the court confirmed that the parties agreed to place petitioner at Delancey Street, but there remained the issue of whether petitioner would agree to the six year suspended sentence. (Ex. 6 at 5.) Petitioner's counsel responded:

    MS. DUEY: We are going to submit it on the issue. He understands that the five years was based on the first possibility of him going to CRC or doing a prison term, but Delancey Street was not part of that agreement.

    He is willing to agree to the six years, and he still wants to go to Delancey Street, and he's also willing to waive his credits.

(Ex. 6 at 5.) The court then engaged in the following colloquy with petitioner:

    THE COURT: Do you understand all of this, sir?

    [PETITIONER]: Yes.

    THE COURT: Mr. Silvera, it's a good deal if you really intend on following through here.

1  It's not such a good deal if you are just using this as an out to avoid the Department of Corrections today, because you will get a
2  lesser term if I sentence you to the Department of Corrections today, than you would if you should be placed at Delancey Street
3  and violate.

4  [PETITIONER]: I understand.

5  THE COURT: Okay. I'm willing to give you a chance. I don't have a problem doing that, but I want you to understand, there is
6  quite a downside to this.

7  [PETITIONER]: Yes.

8  THE COURT: Mr. Silvera, do you understand that at the time that you entered your plea in this matter, you were advised that the
9  maximum term that you could receive for this offense was five years.
10
   I'm advising you today, that if I place you in the Department of
11  Corrections, you will receive a suspended state prison sentence of six years, and are you agreeable to this?
12
   [PETITIONER]: Yes.
13
   THE COURT: Do you also understand that in order to do this, you
14 are going to be waiving credits in the event of a future violation, which means that if you should violate in the future and be brought
15 back before the Court, and the Court finds that you are in fact in violation, you will not have the benefit of any of the credits you are
16 otherwise entitled to, which includes credits for the time you spent in custody, good time, or work credits, program credits, past,
17 present and future, meaning that you have waived all credits that you would otherwise be entitled to in the event of a future
18 violation.

19  Do you understand this?

20  [PETITIONER]: Yes, I do.

21  THE COURT: And are you agreeable to the credit waiver?

22  [PETITIONER]: Yes, I am.

23 (Ex. 6 at 5-7.)

24      The trial court found, and the state court record reflects, that petitioner's plea was

25 given voluntarily and with a full understanding of its consequences. The five year sentence was

26 changed to a six year sentence based on a recent change in the law, and the six year sentence was

8

not imposed until after defense counsel had an opportunity to meet and confer with petitioner. Petitioner was then questioned in open court and acknowledged that he understood the change from five to six years, yet wished to agree to the sentence of six years if placed in the Delancey Street Program. Accordingly, petitioner is not entitled to relief on this claim.

Petitioner further argues that the defense counsel told petitioner the original plea agreement was "no good," so that means petitioner "never admitted any prison priors in open court that then needed to be proven in a separate jury trial." (Dkt. No. 1 at 5.) However, as respondents point out, the modification to the plea agreement related to two terms only: petitioner's placement in the Delancey Street Program, and the suspended sentence revision from five to six years. The record reflects that on March 9, 2007, the court reviewed the plea agreement with petitioner and defense counsel. (Ex. 3.) The court confirmed with petitioner that prior to petitioner initialing and signing the plea agreement, petitioner and defense counsel reviewed "each of the rights and consequences [petitioner] acknowledged. (Ex. 3 at 3.) Petitioner admitted he understood them all. (Id.) Petitioner denied having any questions about "any of them." (Ex. 3 at 3.) The court then confirmed with petitioner that he was "going to be admitting Count 1 and the three prior prison terms alleged pursuant to [Cal. Penal Code §] 667.5(b)." (Ex. 3 at 4.) The court informed petitioner the court would impose the midterm of two years, plus one year for each of the three prior prison terms, and petitioner confirmed he understood. (Ex. 3 at 4.) The court then reminded petitioner that if he did not qualify for CRC, the court would

> recall the sentence in this matter and strike the terms imposed for the prison priors, so that [petitioner] would receive a total sentence in that case of two years in the Department of Corrections.

(Ex. 3 at 5.) Petitioner then pled no contest to second degree commercial burglary, and admitted, in open court, that petitioner was

> convicted in Solano County on January 10th, 2002 of a violation of Health and Safety Code Section 11378, and in Yolo County on September 13th, 2001 of a felony violation of Vehicle Code

9

Section 2800.2, and in Solano County on February 5th, 2004 of a violation of Health and Safety Code Section 11378. Each of these convictions and subsequent prison terms were served within the meaning of Penal Code Section 667.5(b).

(Ex. 3 at 5-6.) The plea colloquy reflects that the trial court did not strike the terms imposed for the prison priors, but only changed petitioner's assignment from CRC to Delancey Street and increased the suspended sentence from five years to six. Because the record reflects petitioner admitted these prior prison terms on the court record, petitioner's argument concerning the prison priors is unavailing.[3]

The state court's rejection of petitioner's first claim for relief was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent. Accordingly, petitioner's first claim for relief is denied.

### B. Alleged Ineffective Assistance of Counsel

Petitioner next claims that trial counsel was ineffective because counsel failed to move to withdraw the plea agreement.

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's

---

[3] In the traverse, petitioner raises, for the first time, a claim that petitioner only had two "prior separate prison terms," rather than three, and that "counsel, court and [the] probation department all erred in telling petitioner he had to admit three prison priors when he only had two." (Dkt. No. 15 at 2.) Petitioner states that his first prison term was a "package" of Case No. CR014706 in Yolo County on 9/21/01 and Case Nos. VCR154194 and FCR193582 in Solano County on 1/10/02, and that his second prison term was in Case No. VCR170650 in Solano County on 11/19/03. (Dkt. No. 15 at 4-5.) However, a "[t]raverse is not the proper pleading to raise additional grounds for relief." Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994). Moreover, petitioner has presented no probative evidence demonstrating that the three separate convictions recited by the trial court, each incurred in different years, did not result in three separate prison terms, as expressly found by the trial court. In any event, habeas corpus relief is unavailable for alleged errors in the interpretation or application of state sentencing laws by either a state trial court or a state appellate court. Hendricks v. Zenon, 993 F.2d 664, 674 (9th Cir. 1993).

performance fell below an objective standard of reasonableness. Id. at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the wide range of professional assistance." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citation omitted). Additionally, there is a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citation omitted).

Recently, the Ninth Circuit clarified how courts must analyze ineffective assistance claims under AEDPA.

> Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S. Ct. at 788.

The Strickland standards apply to claims of ineffective assistance of counsel involving counsel's advice offered during the plea bargain process. See Hill v. Lockhart, 474 U.S. 52, 58 (1985) (same two part standard applies in ineffective assistance of counsel claims arising during the plea process); Nunes v. Mueller, 350 F.3d 1045, 1052 (9th Cir. 2003) (the

11

1  Sixth Amendment "protect[s] the reliability of the entire trial process."). "A defendant has the
2  right to make a reasonably informed decision whether to accept a plea offer." Turner v.
3  Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (citations omitted).  Trial counsel must give the
4  defendant sufficient information regarding a plea offer to enable him to make an intelligent
5  decision. Id. at 881.  See also Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986) ("[C]ounsel have a
6  duty to supply criminal defendants with necessary and accurate information.")  However, counsel
7  is not "required to accurately predict what the jury or court might find." Turner, 281 F.3d at 881.
8  See also McMann v. Richardson, 397 U.S. 759, 771 (1970) ("uncertainty is inherent in predicting
9  court decisions.").  Nor is counsel required to "discuss in detail the significance of a plea
10 agreement," give an "accurate prediction of the outcome of [the] case," or "strongly recommend"
11 the acceptance or rejection of a plea offer. Turner, 281 F.3d at 881.  Although counsel must fully
12 advise the defendant of his options, he is not "constitutionally defective because he lacked a
13 crystal ball." Id.  The relevant question is not whether "counsel's advice [was] right or wrong,
14 but . . . whether that advice was within the range of competence demanded of attorneys in
15 criminal cases." McMann, 397 U.S. at 771.
16        Here, petitioner contends that defense counsel should have retracted the plea
17 rather than encourage petitioner to take the amended plea.  Petitioner also argues that defense
18 counsel did not discuss the three prison priors at the time of the amended plea bargain.
19        However, review of the record demonstrates that petitioner was seeking drug
20 treatment rather than incarceration.  When petitioner's referral to CRC failed, he sought
21 placement in the Delancey Street Program.  The trial court emphasized the increased prison
22 sentence petitioner faced by seeking placement in the Delancey Street Program rather than being
23 immediately sentenced to prison, but petitioner confirmed he wanted to accept the six year
24 suspended sentence and be placed in the Delancey Street Program.  Defense counsel was not
25 ineffective for negotiating an amendment to the initial plea bargain that resulted in petitioner's
26 placement in Delancey Street, the alternative placement that petitioner sought.  Moreover, in light

of petitioner's desire to avoid state prison, defense counsel was not ineffective for failing to argue the plea be retracted. Petitioner has not demonstrated that he would have been willing to insist on going to trial. Petitioner's ineffective assistance of counsel claim fails.

Petitioner's argument concerning the three prison priors also fails. As noted above, the modified plea agreement only addressed petitioner's placement and the suspended prison term. Petitioner admitted his prior prison terms in open court prior to the hearing on the modifications to the plea. Because the prior prison terms were not at issue in the modification, defense counsel was not ineffective for failing to revisit them with petitioner at the time of the plea modification.

Thus, the state court's rejection of petitioner's second claim for relief was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent. Therefore, petitioner's second claim for relief is denied.

### C. Alleged Coercion to Waive Custody Credits

In his third claim, petitioner argues that the trial court and defense counsel coerced petitioner into waiving his custody credits.

As noted above, a guilty plea must be knowing, intelligent and voluntary. Brady v. United States, 397 U.S. at 748. As to the waiver of custody credits, "a defendant may expressly waive entitlement to [California Penal Code] section 2900.5 credits against an ultimate jail or prison sentence for past and future days in custody." People v. Johnson, 28 Cal.4th 1050, 1054-55 (Cal. 2002). "Because a defendant may give up the statutory right to custody credits, a trial court has discretion to condition a grant or extension of probation upon a defendant's express waiver of past and future custody credits." People v. Johnson, 28 Cal.4th at 1055.

Here, petitioner has set forth no facts or evidence demonstrating he was coerced into waiving his custody credits. Rather, the record reflects that the prosecution sought waiver of custody credits, and the trial court expressed its intent to order a waiver. (Ex. 6 at 3.) Moreover, the record demonstrates that defense counsel was provided an opportunity to discuss the

1  increased sentence with petitioner and, when defense counsel and petitioner returned to court,
2  defense counsel reported that petitioner was also willing to waive custody credits.  Then, during
3  the plea colloquy, the trial court confirmed with petitioner that he was willing to waive the
4  custody credits, which meant that petitioner would forever lose earned

> credits for the time . . . spent in custody, good time, or work
> credits, program credits, past, present and future, meaning that
> [petitioner] waived all credits that [he] would otherwise be entitled
> to in the event of a future violation.

(Ex. 6 at 5-7.)  Given the strong admonitions the trial judge gave petitioner concerning the custody credit waiver, petitioner's confirmation that he understood and agreed to the credit waiver during the plea colloquy, as well as petitioner's expressed desire to obtain drug treatment placement rather than incarceration, the record does not demonstrate petitioner's custody credit waiver was coerced.  Petitioner has failed to adduce any evidence that petitioner's will was overcome in connection with his waiver of custody credits.  <u>Brady v. United States</u>, 379 U.S. at 749.  The trial court acted within its discretion to require petitioner to waive custody credits in connection with the plea bargain.  Moreover, petitioner has failed to demonstrate that had defense counsel encouraged petitioner to refuse to waive custody credits, the trial court would have refrained from ordering the waiver of custody credits.  Therefore, petitioner's claim is unavailing.

The state court's rejection of petitioner's third claim for relief was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent.  Therefore, petitioner's third claim for relief is denied.

## VI.  <u>Conclusion</u>

For all of the above reasons, the undersigned denies petitioner's application for a writ of habeas corpus.

Before petitioner can appeal this decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A certificate of appealability may issue under 28

U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. Fed. R. App. P. 22(b).

For the reasons set forth above, the undersigned finds that petitioner has not made a showing of a substantial showing of the denial of a constitutional right.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's application for a petition for writ of habeas corpus is denied; and

2. The court declines to issue the certificate of appealability referenced in 28 U.S.C. § 2253.

DATED: April 8, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

silv2326.157